IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20–CV–455–BR

| | | |
|---|---|---|
| PELLA CORPORATION, AS PLAN SPONSOR, ADMINISTRATOR AND FIDUCIARY OF PELLA CORPORATION GROUP MEDICAL PLAN, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| SCOTT SCHULZ, NARRON & HOLDFORD, P.A., BEN L. EAGLES, LAW OFFICE OF KEVIN WILLIAMS, PLLC and KEVIN WILLIAMS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Pella Corporation's, as plan sponsor, administrator and fiduciary of the Pella Corporation Group Medical Plan, ("the Plan" or "plaintiff") motion for a temporary restraining order ("TRO") and preliminary injunction. (DE # 5.)

## I. BACKGROUND

According to the verified complaint, the Plan is an ERISA-qualified employee welfare benefit plan, in which defendant Schulz participated. (DE # 1, at 2.) On 28 August 2018, Schulz suffered injuries after a slip and fall at Harris Teeter, in Wilson County, North Carolina. (Id. at 3.) Following his fall, the Plan paid medical expenses on behalf of Schulz totaling at least $69,554.04. (Id.) The Plan mandates subrogation or reimbursement of these expenses if Schulz recovers for his injuries in tort. (Id.)

Schulz retained defendants Ben Eagles, Narron & Holdford, P.A., Kevin Williams, and the Law Office of Kevin Williams, PLLC (collectively "defendants") to represent him in personal injury claims stemming from the fall. (Id. at 3–4.) Plaintiff notified defendants of the

Plan's rights to reimbursement and/or subrogation.  (Id. at 4.)  Without the Plan's knowledge or consent, "Defendant Schulz, through and with the assistance of the Narron Defendants and the Williams Defendants, settled his personal injury claims arising out of the [fall] for an undisclosed sum."  (Id.)  Plaintiff filed this action on 21 August 2020, seeking declaratory and injunctive relief, enforcement of its equitable lien or establishment of a constructive trust, and in the alternative, asserting claims for interference with contract and conversion.  (Id. at 5–9.)

## II.    DISCUSSION

Although "[t]he substantive standard for granting either a temporary restraining order or a preliminary injunction is the same," Patel v. Moron, 897 F. Supp. 2d 389, 395 (E.D.N.C. 2012) (citations omitted), "a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held."  Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999).  Thus, TROs are limited to fourteen days in duration. Fed. R. Civ. Pro. 65(b)(2).  The party seeking a TRO must establish:

> they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest.

League of Women Voters of N. Carolina v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  "Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. Pro. 65(d)(1).  Every TRO "issued without notice must state the date and hour it was issued; describe the injury and

state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed R. Civ. Pro. 65(b)(2).[1]

### A. Irreparable Harm

In deciding whether a TRO should issue, the court should first decide "whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied[.]" Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002).

Plaintiff's claims revolve around its purported entitlement to subrogation for medical bills it paid on behalf of Schultz. (See DE # 1.) It requests an order "restraining [d]efendants from wasting, disbursing, comingling, spending or converting any of the proceeds of Schulz's personal injury settlement." (DE # 6, at 13.) In Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan, the Supreme Court specifically held: "when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502 (a)(3) [of the Employee Retirement Income Security Act of 1974]." 136 S. Ct. 651, 655 (2016). Thus, dissipation of the settlement funds would likely result in irreparable harm to plaintiff, as it may be unable to pursue its equitable claim to the funds. See Diamond Crystal Brands, Inc. v. Wallace, 563 F. Supp. 2d 1349, 1354 (N.D. Ga. 2008) (finding injunctive relief appropriate because plaintiff may be unable to obtain relief if the funds become untraceable); Mank v. Green, 297 F. Supp. 2d 297, 304 (D. Me. 2003) (finding likelihood of irreparable harm because plaintiff's equitable right to recover funds would be lost if identifiable proceeds were dissipated); Benefits Admin. Comm. of the Brush Aftermarket N.

---

[1] Plaintiff provided notice of this motion to defendants by certified mail, fax, and email on 21 August 2020. (See DE # 6, at 1.) As discussed below, the likelihood of irreparable harm to plaintiff is great and the harm to defendants if a TRO is entered is marginal. The court finds that these circumstances warrant issuance of a TRO without further notice to defendants. Further delay could trigger the dissipation of the settlement funds and potentially negate plaintiff's ability to pursue its claims for relief. See Benefits Admin. Comm. of the Brush Aftermarket N. Am., Inc. v. Wencl, No. 16-cv-2794, 2016 U.S. Dist. LEXIS 190735, at *6–7 (D. Minn. Aug. 22, 2016).

Am., Inc. v. Wencl, No. 16-cv-2794, 2016 U.S. Dist. LEXIS 190735, at *6–7 (D. Minn. Aug. 22, 2016) (finding TRO appropriate due to likelihood of irreparable harm if funds were dissipated).

**B.  Balance of Equities**

Finding a strong likelihood of irreparable harm, the court must next balance the likelihood of harm to the plaintiff with the likelihood of harm to the defendant.  Scotts, 315 F.3d at 271.  The balance of the hardships tips decidedly in favor of plaintiff here.

As discussed above, plaintiff may be irreparably harmed if a TRO is not granted and defendants are permitted to dissipate the settlement funds.  Because plaintiff seeks only to maintain the status quo, and only to prevent the dissipation of the amount it claims it is owed, there is no known likelihood of harm to defendants.  See Mank, 297 F. Supp. 2d at 305 (finding the balance of the hardship weighs heavily in plaintiff's favor under similar circumstances).

**C.  Likelihood of Success**

To obtain preliminary injunctive relief, plaintiff must "make a 'clear showing' that they are likely to succeed at trial, [but] plaintiff[] need not show a certainty of success."  Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013) (internal citation omitted) (citing 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.3 (2d ed. 1995)).

A plan fiduciary may bring an action: "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Here, the Plan, attached to plaintiff's verified complaint, provides:

**SUBROGATION**

**Right of Subrogation**

4

> If you or your legal representative have a claim to recover money from a third party and this claim relates to an illness or injury for which this group health plan provides benefits, we, on behalf of your employer or group sponsor, will be subrogated to you or your legal representative's rights to recover from the third party as a condition to your receipt of benefits.
>
> **Right of Reimbursement**
> If you have an illness or injury as a result of the act of a third party . . . and you or your legal representative files a claim under this group health plan, as a condition of the receipt of benefits, you or your legal representative must reimburse us for all of the benefits paid for the illness or injury from money received from the third party or its insurer . . . to the extent of the amount paid by this group health plan on the claim.
>
> . . . .
>
> You agree to recognize our rights under this group health plan to subrogation and reimbursement. These rights provide us with a priority over any money paid by a third party relative to the amount paid by this group health plan, including priority for any claim for non-medical charges, or other costs and expenses. We will assume all rights of recovery, to the extent of payment made under this group health plan, regardless of whether payment is made before or after settlement of a third party claim, and regardless of whether you have received full or complete compensation for an illness or injury.

(DE # 1-1, at 3.) Thus, it appears plaintiff is seeking equitable relief consistent with 29 U.S.C. § 1132(a)(3).

Given the clear right to pursue equitable relief under 29 U.S.C. § 1132(a)(3) and the Plan's express subrogation and/or reimbursement provisions, and the fact that Schultz did recover for his injuries in tort, plaintiff has demonstrated a likelihood of entitlement to the funds paid on his behalf.

### D.     Public Interest

"There is a public interest in enforcing the terms of a valid contract." First Nat'l Ins. Co. of Am. v. Sappah Bros., Inc., 771 F. Supp. 2d 569, 576 (E.D.N.C. 2011) (citation omitted). In fact, "the public has an interest in insuring the integrity of ERISA plans." Diamond, 453 F. Supp. 2d at 1354. Thus, the public interest weighs in favor of maintaining the status quo until this matter may be heard.

Based on the foregoing, plaintiff has made a clear showing that: it will likely suffer irreparable harm if a TRO is not entered, it is likely to succeed on the merits, the balance of hardships is in its favor, and that a TRO is in the public interest. Plaintiff's motion for a temporary restraining order will be granted.

### E. Bond

Rule 65 provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. Pro. 65(c). "This rule is mandatory and unambiguous." Hoechst, 174 F.3d at 421. Thus, the district court "is not free to disregard the bond requirement altogether," but may set the amount "in such a sum as the court deems proper." Id. See also L.S. v. Delia, No. 5:11-cv-354, 2012 U.S. Dist. LEXIS 43822, at *56 (E.D.N.C. Mar. 29, 2012). "Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice." Great Am. Ins. Co. v. Global Team Elec., LLC, No. 3:20-cv-218, 2020 U.S. Dist. LEXIS 79279, at *18–19 (W.D.N.C. Apr. 24, 2020) (quoting Hoechst, 174 F.3d at 421 n.3).

Here, the TRO merely prohibits defendants from dissipating funds that plaintiff claims entitlement to. The court finds the risk of harm to defendants is marginal and the bond should so reflect. A bond of $1,000 is appropriate in this case.

### III. CONCLUSION

For the aforementioned reasons, the court GRANTS plaintiff's motion for a temporary restraining order and RESERVES ruling on plaintiff's motion for a preliminary injunction.

Defendants are hereby ENJOINED from wasting, disbursing, spending, converting or comingling $69,554.04 received in settlement of the personal injury claims arising out of injuries sustained by Schulz as a result of the fall occurring on 28 August 2018. The court DIRECTS the Clerk to serve each defendant a copy of this order by mail at the addresses listed on the summonses and by email to the addresses provided on plaintiff's certificate of service. (See DE # 5, at 3.) Plaintiff is ORDERED to post or otherwise provide security in the principal amount of one thousand dollars ($1,000) for the payment of such costs and damages as may be incurred or suffered by defendants if it is later found that they were wrongfully enjoined or restrained by this order. The Clerk is further DIRECTED to set a hearing on plaintiff's motion for preliminary injunction for 3 September 2020. On or before noon 1 September 2020, defendants may file any necessary memorandum with any supporting documents in response to plaintiff's motion for a preliminary injunction. This order shall expire upon the conclusion of the 3 September 2020 hearing, unless extended by the court.

    This 24 August 2020.
    6:19PM

                                                _____
                                                    W. Earl Britt
                                                    Senior U.S. District Judge